Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
**KAMBERLAW, LLP**
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

Counsel for Plaintiff Mark Tobin, and the
Putative Class

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARK TOBIN, individually, and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**GENERAL MILLS SALES, INC.,**<br><br>**Defendant.** | CASE NO. _____<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);**<br>**2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.); AND**<br>**3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.).**<br><br>**"DEMAND FOR JURY TRIAL"** |

Plaintiff Mark Tobin on behalf of himself and others similarly situated in California, by and through his undersigned counsel, hereby files this Class Action Complaint and states as follows based on investigation and information and belief:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

1.    Defendant General Mills Sales, Inc. fails to disclose, and materially omits, that its chocolate-flavored Cocoa Puffs cereal products (the "Products") contain a substantial and dangerous

**CLASS ACTION COMPLAINT**

amount of lead.[1]

2.      According to independent testing and analysis, the amount of lead contained in an average-size bowl of the Products exceeds the California Proposition 65 Maximum Allowable Daily Level ("MALD").[2]

3.      There is no safe level of lead for children. According to the Centers for Disease Control and Prevention ("CDC"), "[e]ven low levels cause harm."[3]

4.      Defendant specifically and intentionally targets children in its marketing and advertising of the Products.

5.      Defendant knows or should have known that the Products contain lead.

6.      Defendant fails to warn consumers—and materially omits from the labels of the Products—that they contain lead.

7.      Defendant has an independent duty to disclose the lead in the Products based on the health risk associated with consuming the Products and/or because the Products are unfit for human consumption—and particularly unfit for children.

8.      Despite the failure to disclose that the Products contain lead, Defendant makes other disclosures on the box label of the Products, including that the Products "MAY CONTAIN WHEAT INGREDIENTS" and "Contain[] Bioengineered Food Ingredients" (the "Disclosures").

9.      These Disclosures reasonably lead consumers to believe that the potentially negative aspects of the Products have been disclosed, when in fact, Defendant fails to warn consumers that the Products contain lead.

10.      Other label statements lead reasonable consumers to believe that the Products provide nutritional benefits, including prominent representations on the front label that the Products are a good source of calcium, provide 16 grams of whole grain per serving, and are made with 12 vitamins and

---

[1] This action includes in the definition of "Products" all sizes of chocolate flavored Cocoa Puffs cereal sold during the Class Period (defined below), including but not limited to the following sizes: 10.4 oz, 15.2 oz, 18.1 oz, and 25.8 oz.

[2] Plaintiff does not bring this action pursuant to Proposition 65 but, as set forth below, based on violations of California consumer protection law.

[3] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8553025/

**CLASS ACTION COMPLAINT**

minerals. Defendant also variously represents on certain Product labels that the Products are "NOW WITH 2X VITAMIN D" and that "VITAMIN D HELPS BUILD STRONG BONES" (collectively, the "Nutritional Representations").

11.     These Nutritional Representations, individually and collectively, are misleading based on the lead contained in the Products (the "misrepresentations").

12.     Plaintiff and Class members have suffered economic injury based on their purchase of the Products, which they would not have bought had they known that the Products contain lead.

## II.     JURISDICTION AND VENUE

13.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

14.     This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declaration of Mark Tobin Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exh. A.

## III.     FACTUAL ALLEGATIONS

### Defendant's Labeling of the Products Intentionally Targets Children

16.     Defendant markets and sells the Products to both adults and children.

17.     Defendant's label imagery on the Products is designed to specifically target children.

18.     The following are examples of the box label images of the Products:

CLASS ACTION COMPLAINT





19.     The front label contains artwork, images, and words, which are designed to appeal to children, including: (1) a giant cartoon image of the Cocoa Puffs mascot, Sonny the "Cuckoo Bird"; (2) the Product brand name, "Cocoa Puffs" in giant, bubble letters; (3) the prominent phrase "GREAT CHOCOLATEY TASTE!"; and (4) an image of a giant bowl of enlarged cocoa puffs cereal, saturated in what appears to be a wave of chocolate milk, which the Cuckoo Bird is drinking through a pink and blue striped cartoon straw.

20.     According to a study from Cornell University Food and Brand Lab, brand mascots like the Cuckoo Bird are designed to get the attention of kids in the grocery store aisle and "make you want his cereal more."[4]

21.     "Due to the magnetic effect that these characters have on children, organizations including the American Psychological Association have called for the elimination of food product marketing directly to children."[5]

---

[4] https://qz.com/194544/the-creepy-ways-that-cereal-boxes-get-your-kids-attention

[5] https://www.fooddive.com/news/will-removing-cartoon-characters-from-cereal-boxes-change-consumers-focus/569811/

**CLASS ACTION COMPLAINT**

22.   "A study in the Journal of Public Policy and Marketing found . . . characters on packaging influences choice between two brands of similar products. When presented with the choice between a neutrally-packaged, healthy granola-based cereal and General Mills' Cocoa Puffs featuring Sonny the Cuckoo Bird on the box, for example, children are more likely to reach for the latter."[6]

23.   A 2009 study from Yale University's Rudd Center for Food Policy and Obesity shows "pervasive targeting of children" for breakfast cereals that are high in sugar.[7]

24.   The study found that "General Mills markets to children more than any other cereal company. Six of the ten least healthy cereals advertised to children are made by General Mills . . . ."[8]

25.   Cocoa Puffs are among the cereal brands Defendant markets "directly to children".[9]

26.   Defendant knows that households with children are the primary purchasers of the Products.

**Lead is Harmful to Adults and Particularly Harmful to Children**

27.   Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[10]

28.   Lead exposure and accumulation is particularly dangerous to children.

29.   "Scientific evidence suggests that there is no known safe blood lead level (BLL), because even small amounts of lead can be harmful to a child's developing brain."[11]

30.   Evidence shows that BLLs of less than 10 micrograms in children have negative effects on their neurologic, cardiovascular, immunologic, and endocrine systems.[12]

---

[6] *Id.*

[7] https://news.yale.edu/2009/10/26/kids-spoon-fed-marketing-and-advertising-least-healthy-breakfast-cereals

[8] *Id.*

[9] *Id.*

[10] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898 (hereafter "Lead toxicity").

[11] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8553025/

[12] *Id.*

**CLASS ACTION COMPLAINT**

31.     Because "[l]ead is a neurotoxin" it is particularly "dangerous for children" because "it affects kids' developing brains and nervous systems" and "[e]ven small amounts of lead exposure add up over time, increasing risk of developmental effects."[13]

32.     Lead is also dangerous to adults.

33.     "The most recent evidence from epidemiological and toxicological studies suggests that low levels of exposure can, over time, damage the heart, kidneys, and brain."[14]

34.     One study found an increased risk of death from heart disease, including mortality associated with cardiovascular disease and stroke in association with blood lead concentrations as low as 2 μg/dL.[15]

**The Products Contain Lead in Excess of the Proposition 65 Daily Limits**

35.     California's Proposition 65 establishes a MALD of .5 mcg of lead per day for reproductive toxicity.[16]

36.     According to independent laboratory testing, the Products contain .432 mcg of lead per 1 cup (36 g) serving.

37.     Almost all consumers, however, substantially exceed the recommended serving size per bowl of cereal poured and, therefore, the amount of lead per bowl of the Products exceeds the MALD.

38.     According to a study conducted by Consumer Reports regarding Cereal Portion Control, 92% of survey participants exceeded the recommended serving size.[17]

39.     Depending on bowl size, consumers exceeded the serving size by between 24% to 132% for a non-dense cereal, such as the Products.[18]

---

[13] LEAD POISONING, C.S. Mott Children's Hospital, University of Michigan Health, https://www.mottchildren.org/posts/your-child/lead-poisoning.

[14] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1797860/

[15] *Id.*

[16] https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds

[17] https://www.consumerreports.org/cro/news/2014/12/cereal-portion-control-matters/index.htm#

[18] *Id.*

**CLASS ACTION COMPLAINT**

40.     Even at 24% more than the serving size, the Products contain .532 mcg of lead and exceed the MALD.

41.     At 132% more, the Products contain .996 mcg of lead per serving, or double the MALD.

42.     The fact the consumers pour more of the Product than the serving size is no accident and, in fact, is directly related to Defendant's prominent depiction of the cereal on the front of the box.

43.     According to a study published in the National Institute of Health database, there is a direct correlation between exaggerated serving size graphics on cereal boxes and the quantity of cereal that consumers serve themselves.[19]

44.     On average, consumers who view graphics such as the one on the Products serve themselves approximately 42% more cereal than the suggested serving size.[20]

45.     At 42% more than the serving size, the Products contain .612 mcg of lead per serving and exceed the MALD.

46.     Defendant knows and intends that consumers of the Products exceed the 1 cup serving size.

47.     Defendant fails to disclose the presence of lead in the Products, in any amount.

**Defendant Omits that the Products Contain Lead; Reasonable Consumers are Likely to be Misled and Deceived**

48.     Cocoa Puffs cereal and General Mills are trusted brands and household names.

49.     Reasonable consumers of Defendant's Products, like Plaintiff, have no reason to suspect that the Products contain harmful lead.

50.     The Nutritional Representations on the Product labels lead reasonable consumers to believe that the Products provide nutritional benefits.

51.     The Disclosures on the Product labels lead reasonable consumers to believe that all potential issues (such as the possible presence of wheat ingredients) have been disclosed.

52.     The Nutrition Representations and Disclosures are misleading and deceptive based on the presence of lead in the Products.

---

[19] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5294869/

[20] *Id.* (Here, that amount would be 1.42 cups).

**CLASS ACTION COMPLAINT**

53.     Defendant knew, or should have known, that the Products contain lead and willfully or intentionally failed to disclose this fact to consumers.

54.     Defendant owed consumers a duty of care to adequately test its Products for the presence of heavy metals and, if any such metals were found, to remediate or disclose their presence.

55.     Defendant, however, failed to disclose the presence of lead in the Products.

56.     The disclosure of lead in the Products would negatively impact Defendant's sales of the Products and its bottom line.

57.     If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products.

58.     There are other "chocolatey" cereals on the market.

59.     According to independent testing of other "chocolatey" cereals, those cereals do not contain lead.

60.     When choosing between a chocolate cereal containing lead and a chocolate cereal without lead, consumers are likely to choose the cereal without lead, irrespective of whether they are purchasing cereal for their own consumption or purchasing cereal for their children.

61.     Consumers, however, are deprived of making this informed choice because Defendant fails to disclose the presence of lead in the Products.

62.     Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

63.     If Plaintiff had known the truth about Defendant's Products, he would not have purchased the Products.

64.     Plaintiff and Class members were harmed based on money spent to purchase the Products, which they otherwise would not have spent if they had known that the Products contain lead.

## IV.     PARTIES

65.     Plaintiff Mark Tobin is a citizen of California who purchased the Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

66.     The advertising and labeling on the package of the Products purchased by Plaintiff, including the Nutritional Representations and Disclosures, is typical of the advertising, labeling and

**CLASS ACTION COMPLAINT**

representation of the Products purchased by members of the Class.

67.     The price paid by Plaintiff for the Products is typical of the price paid by members of the Class.

68.     Defendant General Mills Sales, Inc. is a Minnesota corporation with its principal place of business in Minneapolis, Minnesota, and is a citizen of Minnesota.

69.     Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

70.     At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

71.     Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

72.     The deceptive acts and omissions giving rise to Plaintiff's claims occurred in this jurisdiction and in this judicial district.

73.     The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

**Plaintiff Was Misled and Deceived by Defendant's Misconduct**

74.     Plaintiff purchased the Products on multiple occasions during the Class Period.

75.     Plaintiff purchased the Products for personal and family use, including for consumption by his minor child.

76.     At the time of purchase, Plaintiff viewed the label box images, including and Nutritional Representations.

77.     At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

**CLASS ACTION COMPLAINT**

78.     Acting reasonably under the circumstances, Plaintiff relied on Defendant's reputation and the reputation of the Products, including based on the images and statements on the box labels, and believed that the Products would be free from harmful effect and safe to consume.

79.     Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

80.     Defendant materially omitted the fact that the Products contain lead.

81.     Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

82.     Defendant continues to sell the misbranded Products.

83.     Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

84.     Unless Defendant is enjoined from failing to disclose the presence of lead in the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been address and remedied.

85.     Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## V.     CLASS DEFINITION AND CLASS ALLEGATIONS

86.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

87.     Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

**CLASS ACTION COMPLAINT**

88.     Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

89.     This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

90.     **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

91.     **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's omission and failure to disclose that the Products contain lead is likely to be material to a reasonable consumer;
- Whether Defendant's omission and failure to disclose that the Products contain lead is likely to deceive a reasonable consumer;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct; and
- The proper measure of damages sustained by Plaintiff and the Class.

92.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class he seeks to represent because Plaintiff, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained

**CLASS ACTION COMPLAINT**

similar injuries arising out of Defendant's conduct. Plaintiff's and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

93.   **Adequacy:** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

94.   **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

        a.      The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

        b.      Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

        c.      Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

        d.      When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

        e.      This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can seek redress for the harm caused to them by Defendant.

**CLASS ACTION COMPLAINT**

95.     Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

96.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

97.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq.*)**
**(*for Plaintiff and the Class*)**

98.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

99.     Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq.* (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . .."

100.    Plaintiff brings this claim seeking restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

101.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

102.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant omitted and failed to disclose that the Products contain lead, despite the Nutritional Representations and Disclosures made on the box labels.

**CLASS ACTION COMPLAINT**

1    103.    Defendant was and is aware that its omission is material to consumers.

2    104.    Defendant was and is aware that its omission is misleading based on the

3  misrepresentations made on the box labels, as described and depicted herein.

4    105.    Defendant had an improper motive—to derive financial gain at the expense of accuracy

5  or truthfulness—in its practices related to the labeling and advertising of the Products.

6    106.    There were reasonable alternatives available to Defendant to further Defendant's

7  legitimate business interests, other than the conduct described herein.

8    107.    Defendant's misrepresentation and omission of material facts, as set forth herein, also

9  constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710,

10  1711, and 1770 and the laws and regulations cited herein, as well as the common law.

11    108.    Defendant's conduct in making the omission described herein constitutes a knowing

12  failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all

13  of which are binding upon and burdensome to its competitors.

14    109.    This conduct engenders an unfair competitive advantage for Defendant, thereby

15  constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

16    110.    In addition, Defendant's misrepresentations and material omission that the Products

17  contain lead constitute an "unlawful" practice because the Product labels are "false or misleading in

18  any particular" and the Products are therefore misbranded under the law.  *See* 21 U.S.C. § 353; Cal.

19  Health and Safety Code § 110660.[21]

20    111.    Because the Products are misbranded, they cannot be legally sold in California. *See* Cal.

21  Health and Safety Code §§ 110385, 110760 ("It is unlawful for any person to manufacture, sell, deliver,

22  hold, or offer for sale any food that is misbranded.").

23    112.    Plaintiff and members of the Class could not have reasonably avoided injury.

24  Defendant's uniform misrepresentations and material omission regarding the Products were likely to

25

26  [21] California's Sherman Food, Drug and Cosmetic Law, Cal. Heath & Saf. Code  § 110765 *et seq.*
(the "Sherman Law"), incorporates all food labeling regulations promulgated by the FDA under the

27  FDCA.  *See e.g.*, Cal. Heath & Saf. Code § 110100(a). To be clear, Plaintiff does not allege any
claims pursuant to the FDCA or Sherman Law and relies on these regulations only to the extent they

28  provide a predicate basis for liability under state law, as set forth herein.

**CLASS ACTION COMPLAINT**

deceive, and Defendant knew or should have known that its misrepresentations and omission were misleading.

113.    Plaintiff purchased the Products with the reasonable belief that the Products were safe for consumption, and without knowledge of Defendant's material omission that the Products contain lead.

114.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

115.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

116.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in an amount according to proof.

117.    As a result of the business acts and practices described above, pursuant to § 17203, Plaintiff and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
**(California Business & Professions Code §§ 17500,** *et seq.***)**
**(***for Plaintiff and the Class***)**

118.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

119.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

**CLASS ACTION COMPLAINT**

120.    Defendant violated § 17500 by failing to disclose that the Products contain lead and by representing that the Products possess characteristics and value that they do not have.

121.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

122.    Defendant's misrepresentations and uniform, material omission that the Products contain lead were likely to deceive, and Defendant knew or should have known that they were misleading.

123.    Plaintiff purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations and omission.

124.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

125.    The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

126.    In making the misrepresentations and omission alleged herein, Defendant knew or should have known that the misrepresentations and omission were deceptive and/or misleading, and acted in violation of § 17500.

127.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

128.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

**CLASS ACTION COMPLAINT**

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for Plaintiff and the Class*)**

129.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

130.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").

131.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

132.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

133.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

134.    Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

135.    Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

136.    Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are expressly represented as having nutritional benefits when they contain a dangerous amount of lead, as described herein.

137.    Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by materially omitting and failing to disclose that the Products contain lead.

138.    In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

139.    Defendant's uniform material, misrepresentations and omission regarding the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations and

**CLASS ACTION COMPLAINT**

omission were deceptive and/or misleading.

140. Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

141. Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain lead.

142. Plaintiff and members of the Class would not have purchased the Products had they known the truth about the lead contained in the Products.

143. Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct.

144. Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

145. Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

146. Pursuant to California Civil Code § 1782(a), on or about May 20, 2024, Plaintiff on his own behalf, and on behalf of the members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice and a draft complaint setting forth Plaintiff's claims.

147. Despite giving Defendant more than 30-days from the date of the notification and draft complaint to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief. As such, Plaintiff seeks compensatory, monetary and punitive damages, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

148. As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

**CLASS ACTION COMPLAINT**

**PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A.      For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.      For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.      For an order awarding, as appropriate, compensatory and monetary damages to Plaintiff and the Class;

D.      For an order awarding injunctive relief;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-and post-judgment interest; and

H.      For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:    July 19, 2024                              Respectfully submitted,

                                                                 KAMBERLAW, LLP


                                                                 By:___*/s/ Naomi B. Spector*_____
                                                                        NAOMI B. SPECTOR

                                                                 3451 Via Montebello, Ste.192-212
                                                                 Carlsbad, CA 92009
                                                                 Phone: 310.400.1053
                                                                 Fax: 212.202.6364
                                                                 nspector@kamberlaw.com

**CLASS ACTION COMPLAINT**